**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NAIM SAATI,**

                                        **Plaintiff,**

    **vs.**                                                          **1:10-CV-1345**
                                                                        **(MAD/DEP)**

**ERIC H. HOLDER, Attorney General;**
**DEPARTMENT OF HOMELAND SECURITY;**
**JANET NAPOLITANO, Secretary, Department**
**of Homeland Security; UNITED STATES**
**CITIZENSHIP & IMMIGRATION SERVICES;**
**MICHAEL AYTES, Acting Deputy Director,**
**United States Citizenship & Immigration Services;**
**KEVIN E. GALLAGHER, Field Director, Albany**
**Field Office; PERRY RHEW, Chief Administrative**
**Appeals Office;**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

DiRAIMONDO & MASI, LLP                 Michael P. DiRaimondo, Esq.
445 Broadhollow Road
Suite 107
Melville, New York 11747
_Attorneys for Plaintiff_

UNITED STATES DEPARTMENT               Christopher W. Hollis, Esq.
OF JUSTICE
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
_Attorneys for Defendants_

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Plaintiff Naim Saati, brings this action for declaratory and injunctive relief pursuant to the Immigration & Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101 et seq. and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.  The parties have moved for summary judgment pursuant to Fed. R. Civ. P. 56.[1] (Dkt. Nos. 16 and 21).

## BACKGROUND[2]

On November 17, 2003, plaintiff, an Israeli citizen, entered the United States on a B-2 visitor's visa for pleasure.  Pursuant to the visa, plaintiff was authorized to remain in the United States for a period of six months.  On January 12, 2005, plaintiff married Valerie Rhodes, a United States citizen.  In August 2005, Ms. Saati filed a Form I-130, Petition for Alien Relative and plaintiff filed a Form I-485, Application to Register Permanent Residence or Adjust Status.

On September 27, 2005, plaintiff and his wife appeared for an interview with the United States Citizenship & Immigration Services ("USCIS") and responded to inquiries about plaintiff's criminal history.  Plaintiff admitted that he was previously arrested in Israel.  The first arrest was when plaintiff was a juvenile.  The second arrest occurred on April 22, 2002.  Plaintiff, twenty years old at the time, was charged with possession of a dangerous drug, which plaintiff explained was marijuana.  The interview was concluded in order to obtain information regarding plaintiff's prior conviction.

---

[1] Plaintiff did not formally cross move for summary judgment but argues in his Response to Defendants' Motion For Summary Judgment, "[s]ummary judgment in favor of the plaintiff is appropriate in the instant matter, as there exists no significant issues of fact, but only issues of law".

[2] The background set forth in this section is taken from: (1) defendant's Statement of Material Facts and plaintiff's response therein; and (2) the exhibits and evidence submitted by defendant in support of the motion for summary judgment; and (3) the exhibits and evidence submitted by plaintiff in opposition to the motion for summary judgment.  The Court has reviewed defendant's Statement of Material Facts to ensure that they are supported by the record. The facts recited are for the relevant time period as referenced in the complaint.

According to court documents, on April 22, 2002, plaintiff was driving a vehicle in which hashish and marijuana were found.  The Statement of Indictment from the State of Israel provided:

> 1.    On April 22, 2002, at around 22:00, on Rashbag St. in Jerusalem, Defendant 1[3] unlawfully held in his jacket pocket a dangerous narcotic type hashish, with the net weight of 1.61 grams, and further unlawfully held in his pants pocket 1 gram of a dangerous narcotic, cannabis type, with a net weight of 1.44 grams.  Defendant 1 further unlawfully held a dangerous narcotic, hashish type, with a net weight of 0.59 grams, which he threw out of the vehicle in which he was traveling.
>
> 2.    In the same circumstances, Defendant 1 unlawfully supplied Defendant 2 with a dangerous narcotic, hashish type, with a net weight of 5.72 grams.  The narcotic was held by Defendant 2 under the chair by the driver in the vehicle of Defendant 1.

The Verdict - Regarding Defendant 1 provided:

> On the foundation of the defendant's response to the statement of the indictment, which includes an admission of the facts in the statement of the indictment, I convict him of an offense in accordance with Article 7(A) + the latter part of (C) of the dangerous Narcotics Ordinance (New Version) 5733-2003.

Due to plaintiff's failure to inform authorities of his prior arrests in the course of applying for a visitor's visa, plaintiff was found inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)[4] as an alien who sought to procure a visa by fraud or willfully misrepresenting a material fact.  Plaintiff was also deemed inadmissible on the basis of plaintiff's controlled substance conviction pursuant

---

[3] Plaintiff was Defendant 1.

[4] 8 U.S.C. § 1182(a)(6)(C) provides:

(C) Misrepresentation
(i) In general
Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

to 8 U.S.C. § 1182(a)(2)(A)(i)(II).[5]  On March 20, 2007, plaintiff filed a Form I-601 waiver

application in an effort to overcome his inadmissibility pursuant to 8 U.S.C. §§ 1182(a)(6)(C) and

1182(a)(2)(A)(i)(II).  Under 8 U.S.C. § 1182(h)[6] and (i)[7], the USCIS has the discretion to issue a

waiver so long as the alien shows that denial of admission would result in extreme hardship to the

alien's spouse.

On June 19, 2007, USCIS again interviewed plaintiff and his wife regarding the pending I-

130 petition and the pending adjustment and inadmissibility waiver applications.  USCIS

approved Ms. Saati's I-130 petition for plaintiff as her alien relative husband.  However, at the

conclusion of the interview, USCIS did not issue a decision on plaintiff's adjustment or waiver

---

[5] 8 U.S.C. 1182(a)(2)(A)(i)(II) provides:

2) Criminal and related grounds
(A) Conviction of certain crimes
(i) In general
Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of--
(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), is inadmissible.

[6] 8 U.S.C. 1182(h), provides, in pertinent part:

h) Waiver of subsection (a)(2)(A)(i)(I), (II), (B), (D), and (E)
The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) of this section and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if--
(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien . . .

[7] 8 U.S.C. § 1182(i) provides:

Admission of immigrant inadmissible for fraud or willful misrepresentation of material fact
(1) The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) of this section in the case of an immigrant who is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien or, in the case of a VAWA self-petitioner, the alien demonstrates extreme hardship to the alien or the alien's United States citizen, lawful permanent resident, or qualified alien parent or child.

applications and provided plaintiff twelve weeks to submit evidence supporting the claims in his

waiver petition.  Specifically, plaintiff was provided with time to prove that his wife would suffer

extreme hardship if USCIS did not waive plaintiff's inadmissibility and if plaintiff was removed

from the United States.

On August 29, 2007, plaintiff provided USCIS with documents in support of his waiver

application.  According to plaintiff's amended complaint, these documents included letters from

Christine Sawtelle (plaintiff's employee), Rabbi Paul B. Silton, Colleen Murphy (plaintiff's

mother-in-law), Andrea Saati, Valerie Saati and Jeffrey H. Fox, Ph.D (a mental services provider

who treated plaintiff's wife).  In addition, plaintiff claims that he supplied a letter from Albany

Law School confirming that his wife was enrolled.

On September 27, 2007, USCIS issued a decision denying plaintiff's Application for

Waiver of Grounds of Excludability (Form I-601).  The USCIS found:

> Upon review of the documentation submitted in support of the waiver
> of inadmissibility it does not appear that the factors in this case rise to
> the level of extreme hardship.  Therefore, the evidence does not
> establish that the applicant is able to show extreme hardship over and
> above the normal economic and social disruptions involved in the
> deportation of a family member.

On the same date, the USCIS issued a decision denying plaintiff's Application for Status

as Permanent Resident.  The agency concluded, " [t]he instant application is denied on the

grounds that the applicant is inadmissible under Section 212(a)(2)(A)(i)(II) and Section

212(a)(6)(c)(i) of the Act.  Any permission to remain in the United States or any employment

authorization, previously granted to the applicant, is hereby revoked as of this date."[8]

---

[8] The September 2007 decision denying plaintiff's Application for Adjustment of Status, Form I-485, was
annexed as an exhibit to plaintiff's Amended Complaint.

On October 16, 2007, plaintiff filed a motion to reopen the denial of his I-601 waiver application. On October 22, 2007, plaintiff's motion to reopen was denied. On October 26, 2007, plaintiff filed an appeal of the motion to reopen with the Administrative Appeals Office ("AAO"). On July 13, 2010, the AAO dismissed plaintiff's appeal finding:

> . . . the applicant had, prior to supplying hashish to Nissim Tzuna, possession of 7.47 grams of hashish. The drug equivalency of 1 gram of marihuana/cannabis (granulated or powdered) is 1 gram of marihuana, and 1 gram of hashish is equivalent to 5 grams of marihuana. *See United States Sentencing Commission Supplement to the 2000 Guidelines Manual*, dated May 1 2001, Drug Equivalency Table. In order to be eligible for consideration for a waiver under section 212(h) of the Act, the applicant must establish that his conviction was for the drug equivalency of 30 grams or less of marijuana. The applicant has not demonstrated that his conviction for possession of cannabis and hashish meets the requirement of being a single offense of simple possession of 30 grams or less of marijuana.

The Drug Equivalency Table is a source for drug quantity calculation and conversion rates to be used when the drug at issue is not listed in the federal criminal statutes among common drugs and their penalties. The AAO found that at the time of his 2002 arrest, plaintiff possessed the equivalent of 49.79 grams of marijuana.[9] The decision informed plaintiff that he had an opportunity to file a motion to reconsider or a motion to reopen if plaintiff had "additional information".

On August 13, 2010, plaintiff filed a motion to reopen with the AAO using form I-290B Notice of Appeal or Motion. Plaintiff argued:

> 1.  The decision erred by concluding that the applicant engaged in trafficking a controlled substance and possessed more than 30 grams of marijuana. The only evidence referred to in the decision was the police report and charging document. The

---

[9] Defendants concede that this calculation was erroneous. Defendants argue that the actual marijuana-based total is 41.04 grams. (7.92 grams of hashish [1.61 grams found in plaintiff's pocket, .59 grams thrown from the car and the 5.72 grams found under the seat of the car] multiplied by 5 = 39.60 grams of marijuana). 39.60 grams is then added to the 1.44 grams of marijuana found on plaintiff = 41.04 grams.

decision also concluded that the applicant admitted to all the facts in the charge document. Those conclusions are not correct. An affidavit from the applicant confirming this is attached.[10]

2.      The decision raised a ground of inadmissibility which was never raised when the applicant first sought a waiver of inadmissibility. The AAO should not have raised this issue for the first time without allowing applicant to respond to it.

On December 23, 2010, the AAO granted the motion to reopen and affirmed its prior decision. In the decision, the AAO noted, "we determined that, in accordance with the drug equivalency tables found in the U.S. sentencing guidelines, the applicant possessed marijuana or its equivalent in a total amount of 49.79 grams. We acknowledge a slight error in this calculation, as it appears the correct total is 48.35 grams".

Removal proceedings have not commenced and plaintiff is still residing in the United States.

In the Amended Complaint, plaintiff alleges: (1) the AAO's decision is contrary to law because it applied an inapplicable legal standard in finding that plaintiff's possession of marijuana was more than 30 grams; and (2) the AAO's decision raised the issue of plaintiff's eligibility to apply for a waiver pursuant to 8 U.S.C. § 1182(h) for applicants with controlled substances convictions and that plaintiff was denied the opportunity to respond or challenge the AAO's erroneous findings.

Defendant moves for summary judgment arguing that the AAO's denial was not "arbitrary, capricious or contrary to law".

## DISCUSSION

---

[10] In the affidavit dated August 13, 2010, plaintiff claims he did not have hashish in his possession and did not know that his passenger had hashish. Plaintiff further alleges that when he pled guilty, he did so only as to possession of marijuana and never admitted to possession or trafficking hashish.

## I.    SUBJECT MATTER JURISDICTION[11]

The parties cannot consent to the improper exercise of subject matter jurisdiction. *Ruiz v. Mukasey*, 552 F.3d 269, 274, n.1 (2d Cir. 2009); *see also Awah v. Holder*, 2010 WL 2572848, at *2 (D. Md. 2010) (citing *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (if a court is uncertain as to whether jurisdiction exists, it cannot proceed to the merits of the case)). Because federal courts have an independent obligation to ascertain subject matter jurisdiction, the issue must be considered *sua sponte*. *Henry v. Quarantillo*, 684 F.Supp.2d 298, 302 (E.D.N.Y. 2010) (citing *United Republic Ins. Co. v. Chase Manhattan Bank*, 315 F.3d 168, 170-71 (2d Cir. 2003) (subject matter jurisdiction should be treated as a threshold issue, not simply addressed when raised by one of the parties)).

The Administrative Procedures Act ("APA") allows, "'[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute' to seek judicial review of the agency's action". *Kakushadze v. Chertoff*, 2008 WL 2885292, at *5 (S.D.N.Y. 2008).  The APA provides, in pertinent part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   The reviewing court shall–
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be --
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

---

[11] The parties did not address subject matter jurisdiction in their original submissions.  The Court directed the parties to provide additional briefing and appear for oral argument on this issue.

5 U.S.C. § 706.

The APA provides the district court with authority to review agency action.  *Ruiz*, 552 F.3d at 273.  However, the REAL ID Act of 2005, 8 U.S.C. § 1252, divests federal district courts of jurisdiction to review challenges to removal orders.  Section 1252 provides, in pertinent part:

> 1252.  Judicial review of orders of removal
>
> (a)  Applicable provisions:
> (2)  Matters not subject to judicial review
> (B)    Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title . . .
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

*See* 8 U.S.C. § 1252(a)(2)(B).

Removal orders may only be appealed in the Second Circuit.  *Delgado v. Quarantillo*, 2010 WL 726790, at *2 (S.D.N.Y. 2010).  However, even without a removal order, the authority of the district court to review agency decisions in the immigration context is limited by Section 1252.  *See* 8 U.S.C. § 1252(a)(2)(B); *see also Ruiz*, 552 F.3d at 274; *see also Jilin v. Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 200, n. 5 (3rd Cir. 2006) (the jurisdiction-stripping provision applies regardless of whether the judgment, decision or action is made in removal proceedings); *see also Lee v. U.S. Citizenship and Immigration Serv.*, 592 F.3d 612, 619 (4th Cir. 2010) (this

statute explicitly precludes district courts from exercising jurisdiction [ ]regardless of "any other provision of law," or whether the decision was made in removal proceedings).  The Court's authority is further limited.  The Court is precluded from reviewing agency decisions that are deemed "discretionary judgments".  *Barco-Sandoval v. Gonzales*, 516 F.3d 36, 38 (2d Cir. 2008).  Notwithstanding § 1252(a)(2)(B)(i), "nondiscretionary actions . . . purely legal determinations made by the agency . . . remain subject to judicial review.  *Vaso v. Chertoff*, 2010 WL 746393, at *4 (3rd Cir. 2010).  For example, determination of eligibility for adjustment of status or waiver of inadmissibility - unlike the granting of adjustment or the waiver itself- is a purely legal question and does not implicate agency discretion.  *Id.*  (if the plaintiff were challenging the determination that he is statutorily inadmissible for attempting to procure admission through fraud, review of that determination would not be foreclosed by 1252(a)(2)(B));  *cf. Camara v. Dep't of Homeland Sec.*, 497 F.3d 121, 124 (2d Cir. 2007) (arguments that the decision was not supported by substantial evidence or clearly erroneous are mere quarrels over the correctness of fact findings and therefore, the court lack's jurisdiction).  In *Sepulveda v. Gonzalez*, 407 F.3d 59, 62 (2d Cir. 2005).  the Circuit held that § 1252(a)(2)(B) did not strip courts of jurisdiction to review nondiscretionary decisions regarding an alien's eligibility for the relief specified in § 1252(a)(2)(B).  This reasoning has been followed extensively in this Circuit.  *See, e.g., Riero v. Holder*, 337 F. App'x 71, 74 (2d Cir. 2009) (the court of appeals retains jurisdiction to review the determination of a petitioner's statutory eligibility for adjustment of status, which is a non-discretionary determination).  In *Hoo Loo v. Ridge*, 2007 WL 813000, at *3 (E.D.N.Y. 2007), the district court cited *Sepulveda* as authority and retained jurisdiction over a "non-discretionary purely legal claim that the defendants were required to review the plaintiff's application".

In this matter, no removal proceedings have commenced and to date, there is no timetable for such proceedings.  Indeed, defendants could not assure the Court that proceedings would ever be commenced.  Nonetheless, the parties agree that this Court is vested with subject matter jurisdiction.  Plaintiff filed a Form I-601 waiver application in an effort to overcome his inadmissibility pursuant to 8 U.S.C. §§ 1182(a)(6)(C) and 1182(a)(2)(A)(i)(II), which may be waived by USCIS discretion under 8 U.S.C. § 1182(h) and (i).  Sections 1182(h) and (i) are explicitly enumerated in 1252(a)(2)(D)(i) and as such, the court would lack jurisdiction to review the decision. *Cantave v. Farquharson*, 2002 WL 32500859, at \*2, n.3 (D.Conn. 2002) (judicial review is not available for denial of waivers sought pursuant to § 212(h)).  However, the parties claim that this jurisdiction stripping provision does not apply because the decision was not a discretionary denial.  Specifically, the parties argue that plaintiff's claim involves a question of law, not a discretionary decision, regarding plaintiff's eligibility for a waiver.

While not cited by the parties, *Chen v. Napolitano*, 651 F.Supp.2d 63 (S.D.N.Y. 2009), provides support for their position.  In *Chen,* the Southern District of New York was confronted with a striking similar fact pattern.  The plaintiff filed an I-601 and an I-485 seeking a waiver of inadmissibility based upon extreme hardship and adjustment of status.  *Id*. at 66.  The CIS denied the application for the waiver and the plaintiff challenged, not his inadmissibility, but the denial of the waiver.  The plaintiff claimed that the denial of the waiver was based upon, "an erroneous interpretation of the hardship standard, mischaracterizations of the record, and an erroneous and overly stringent evidentiary burden".  *Id*. at 67.  In the complaint, plaintiff alleged that the denial was, "not in accordance with established law and constitutional due process and falls outside the boundaries of the jurisdiction-stripping provisions".  *Id*.  In analyzing the CIS' decision, the Court noted, that it, "lack[ed] jurisdiction to review challenges to factual and discretionary

11

determinations leading to the denial of a petition for review where a jurisdiction-denying provision of the INA is implicated". *Id*. at 69.  Thus, citing § 1182(i), the Court reasoned that the plaintiff must demonstrate that the adjudication of their petition raised a constitutional claim or questions of law .  "A 'constitutional claim' or 'question of law' may arise for example in fact-finding which is flawed by an error of law or where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or based on a legally erroneous standard." *Id*. (citations omitted).   The district court ultimately found that jurisdiction existed over claims because the AAO's decision was flawed by an error of law because the decision represented that the plaintiff did not submit important evidence, when he did submit such evidence. *Id*. at 70.

The parties argue that the decision at issue was a nondiscretionary decision regarding eligibility for a waiver as a matter of law and, as such, the district court has jurisdiction to resolve this matter.  The Court agrees.  As the Fifth Circuit noted in *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234 (5th Cir. 2009), "the BIA held that [the plaintiff] was statutorily ineligible for a hardship waiver because she failed as a matter of law to marshal sufficient evidence of good faith. These are legal and constitutional issues unrelated to the discretion reserved to the Attorney General. Accordingly, jurisdiction is proper."

However, the aforementioned does not conclude the Court's inquiry.  Generally, administrative exhaustion is required before plaintiff can proceed with redress in the courts. *See Ramos v. Ashcroft*, 2002 WL 193404, at *3 (N.D. Ill. 2002) (the plaintiffs contested the denial of their adjustment status applications but did not present a due process claim and could renew their requests if and when immigration instituted removal proceedings).  During oral argument, the Court raised the issue of whether there were administrative courses plaintiff could or should

pursue prior to commencing this action in federal court. Plaintiff's counsel suggested that there were no other avenues available. Moreover, counsel for both parties advised the Court that removal proceedings were based upon "prosecutorial discretion" and that plaintiff did not have the authority to request removal proceedings. Counsel did not provide any authority for that assertion and the Court notes that some caselaw from this district and others suggests otherwise. In *Hussain v. U.S.*, 2009 WL 2413260, at *4 (E.D.N.Y. 2009), the district court held:

> [N]othing prevents petitioner himself from requesting that removal proceedings be commenced against him. In the event that a removal order were issued against petitioner, he could then obtain judicial review of USCIS's denial of his application for adjustment of status. Indeed, in cases involving similar facts, other plaintiffs have requested to be placed in removal proceedings for this very reason.

*See also Kawja v. Holder,* 2010 WL 148217, at *3 (E.D. Va. 2010) (citing *Reno v. Catholic Soc. Serv.., Inc*., 509 U.S. 43, 55, n. 16 (1993) ("Although aliens have no explicit statutory right to force the INS to commence a deportation proceeding, the INS has represented that 'any alien who wishes to challenge an adverse determination on his legalization application may secure review by surrendering for deportation at any INS district office'").

However, the Third Circuit has a different view of the exhaustion requirement in the immigration context. In *Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005), the plaintiff brought suit seeking a declaratory judgment that the denial of his adjustment status was arbitrary and capricious. The court noted that, generally, if there were steps that an immigrant may take to have action reviewed within the agency, then exhaustion is not satisfied. However, in that case, the agency offered no further procedures for the plaintiff to invoke regarding his claim of statutory eligibility. *Id*. The court noted, "[there is no provision for BIA review of an AAO status-adjustment eligibility decision". *Id*. (citing 8 CFR § 3.1(b)). The court further noted, "[i]f the agency institutes removal proceedings against an immigrant, then the immigrant may renew

his or her application during those proceedings, but we do not find this possibility sufficient to render the AAO's eligibility determination "tentative or interlocutory" in this case. *Id*. at 201 (internal citation omitted).  "The Department of Homeland Security did not provide an avenue for administrative appeal of the AAO decision", thus, the Court reasoned, "*Pinho* had no further opportunity to challenge the legality of the decision within the agency, and would have none at all, were he forced to await deportation proceedings that the agency may or may not choose to institute." *Id*.  The Court held:

> . . . an AAO decision is final where there are no deportation proceedings pending in which the decision might be reopened or challenged. But even if the possibility of renewing an adjustment application in future deportation proceedings were thought to cast doubt on the finality of an AAO decision, this case falls into one of the categories "in which the interests of the individual weigh heavily against requiring administrative exhaustion," namely, circumstances in which an "indefinite timeframe for administrative action," results in prejudice to the individual who must await that action. The decision whether or not to institute deportation proceedings is entirely within the discretion of the agency. There are no steps that Pinho can take to force the question in order to have his claim resolved. If the only route to the courts is through deportation proceedings, then the agency retains sole control over whether an individual's purely legal claim-one which has not been made non-reviewable by statute-may ever be brought before the courts.  Such a result would be plainly at odds not only with the APA, but also with broader principles of separation of powers.

*Id*. at 202 (internal citations omitted).

During oral argument, neither party could provide any caselaw to support their position and conceded that the issues presented in this matter are novel and have not yet been addressed by the district court.  The Court has conducted exhaustive research and thoroughly analyzed caselaw from all districts.  As Judge McMahon so aptly stated in her decision in *Nigmadzhanov v. Mueller*, 550 F.Supp.2d 540, 544 (S.D.N.Y. 2008):

> The arguments about whether jurisdiction exists in the circumstances of this case have been made numerous times before district courts across the country, so while this issue remains "open" it does not remain unexplored. The district courts have split both between and within circuits, and even districts.

With respect to administrative exhaustion, this Court is not willing to place the burden on plaintiff to compel defendants to institute deportation proceedings.  No removal proceedings are pending or even contemplated and plaintiff argues that he has no recourse if this Court opts not to entertain his claim.  Moreover, the Court agrees that the agency determinations at issue herein are based upon an application of law, and non-discretionary.  Therefore, based upon *Chen* and *Pinho*, and the fact that the parties offer no inapposite caselaw establishing a clear jurisdictional bar, the Court finds that jurisdiction properly rests with the district court in this matter and thus, the Court will entertain the motions and resolve the issues presented herein on the merits.

## II.      STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986).  A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial.  *See id.*  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See id.*

15

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen 'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

Plaintiff objects to the use of a "multiplier" to determine whether he was ineligible for a waiver and argues that the Drug Equivalency Table does not apply to his case because he was not a defendant in federal criminal proceedings. Moreover, plaintiff contends that the decision was supported "only on an opinion by the "Office of General Counsel"issued on April 23, 1996 (hereinafter "Opinion") and claims that he possessed only 9.36 grams of marijuana, well bellow the 30 gram limit. Defendants argue that plaintiff is "cherry picking" portions of the Opinion he wishes to challenge. Morever, defendants assert that the AAO decision is based on widely accepted standards and therefore, the decision was not arbitrary or capricious.

The Court reviews the agency's factual findings, including adverse credibility determinations under the substantial evidence standard. *Mei Juan Xu v. Holder*, 310 F. App'x 463 -64 (2d Cir. 2009). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' 'or if bound up with record-based factual conclusions, to determine whether it is supported by substantial evidence'". *Singh v. Gantner*, 2008 WL 3152959, at *2 (S.D.N.Y. 2008) (the district court acts as an appellate court when reviewing

agency action).  The district court focuses on questions of law only.  *Id*.  The substantial evidence

standard mandates that the district court not disturb a factual finding if it is supported by

reasonable, substantial and probative evidence in the record.  *Id*.  The narrow scope of review

forbids the district court from substituting its own judgment for that of the agency and mandates

affirmance of the agency decision even if the court disagrees.  *Khamisani v. Holder*, 2011 WL

1232906, at *3 (S.D. Tex. 2011).  The "focal point of the review is the administrative record.

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corp of Eng'rs*, 87 F.3d 1242,

1246 (11th Cir. 1996).  The role of the Court is, "governed by *Chevron* and its progeny, and unless

the 'statute is silent or ambiguous with respect to the specific issue' before us, our work is done."

*Federiso v. Holder*, 605 F.3d 695, 699 (9th Cir. 2010) (citing *Chevron, U.S.A., Inc. v. Natural

Resources Defense Counsel, Inc.*, 467 U.S. 837, 843 (1984)).  "If a statute is found to be silent or

ambiguous on a particular issue, and an agency interpretation is not issued pursuant to the

agency's exercise of its formal rule-making authority, courts will evaluate the agency's

interpretation by applying the factors set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1994)."

*Serrano v. Holder*, 2010 WL 2010007, at *6 (N.D. Ga. 2010) (the *Skidmore* factors include: the

thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency

with earlier and later pronouncements, and all those factors which give it power to persuade, if

lacking power to control).

      The Opinion was issued on April 23, 1996 from the Office of General Counsel and  is

entitled "Section 212(h) waiver for controlled substance violations - forms of marijuana other

than marijuana leaves".  *See* Genco OP. No. 96-3.  The Opinion references 18 U.S.C. App. 4 §

2D1.1 (Drug Equivalency Table, Schedule I, Marijuana) and provides:

> . . . despite their common origin, cannabis leaves and other cannabis
> products are distinguishable.  Simple possession of some cannabis

products is much more serious an offense that simple possession of cannabis leaves.  The law recognizes this distinction.  For sentencing, 30 grams of cannabis resin is equivalent to 150 grams of marijuana. Thirty grams of hashish oil is equivalent to 1500 grams of marijuana.

*   *   *

In adjudicating cases involving forms of the same drug that have different potencies, and that are treated differently for sentencing, it is appropriate for the service to take note of these distinctions.  The Sentencing Guidelines, 18 U.S.C. App. 4 and INA 212(a)(2)(C), 8 U.S.C. 1182(A)(2)(C), provide a basis for distinguishing marijuana leaves from other forms of marijuana.  For purposes of sentencing, for example, 6 grams of cannabis resin is the equivalent of 30 grams of marijuana leaves.  18 U.S.C. App. 4 § 2D1.1 (Drug Equivalency Table, Schedule I, Marijuana) (providing a 1-to-5 ratio for equivalency).

The General Counsel concluded:

Absent some unusual circumstances, however, we recommend that you limit your discretion in Section 212(h) cases so that a Section 212(h) waiver will be denied in most cases in which the alien possessed an amount of marijuana, other than leaves, that is equivalent of more than 30 grams of marijuana leaves under the Federal Sentencing Guidelines, 18 U.S.C. App. 4.

Genco. Op. No. 96-3, 1996 WL 33166334 (INS April 23, 1996).

With regard to the "cherry picking" argument, defendants note that there is no provision in the INA for a waiver of ineligibility for the possession of hashish.  Rather, the waiver is based upon possession of marijuana and "taking plaintiff's arguments to their fullest extent, that would completely remove the waiver for which he's apply here from consideration because the waiver doesn't even mention the possession of hashish".  Defendants have provided no authority for this assertion.  As noted by plaintiff, the Opinion references the Board of Immigration Appeal in the *Matter of Lennon*, 1994 WL 29994, at *24 (1975).   In that case, the Board found:

Several federal courts have noted that hashish (cannabis resin) is merely a refined form of marihuana.  It would be illogical to construe the term "marihuana" under section 212(a)(23) as including the

> cannabis leaves (possibly mixed with stems and seeds) which contain intoxicating cannabis resin, while not including the pure form of the resin which has a much greater intoxicating effect. While it is true that ambiguous provisions of the immigration laws are often construed in favor of the alien, this general maxim does not require us to ignore common sense and legislative objectives in order to reach a construction favoring the alien.

*Id*. (internal citations omitted).

Moreover, the Ninth Circuit has held , "plaintiff's contention that a distinction for the purposes of applying [8 U.S.C. § 1182] should be drawn between marijuana and hashish is without support. Both are derivatives of a common source and we hold in this context that marijuana is sufficiently general in scope to include hashish." *Hamid v. U.S. Immigration and Naturalization Serv*., 538 F.2d 1389, 1391 (9th Cir. 1976). Accordingly, the Court is unpersuaded by this argument.

Turning to the substance of the AAO's decision, the parties agree that the issue of the use of the multiplier in matters such as this is novel. Neither party can cite to any caselaw, from any district, lending support to their arguments. The Court is faced with this matter as one of "first impression".

Pursuant to 8 U.S.C. § 1182(h), "[t]he Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) of this section and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if – (B) in the case of an immigrant who is the spouse, [] of a citizen of the United States  [] if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse []of such alien . . ."  Whether an alien is eligible for a waiver remains a question of statutory interpretation fit for judicial review. *Federiso*, 605 F.3d at 699

("whether issuing [] relief to a particular alien is consistent with the statute's underlying purpose is a case-by-case policy determination that the statutory text commits not to the courts but to the discretion of the Attorney General and his designee the IJ").

Here, the record contains a Statement of Indictment, a Verdict and Sentence with respect to plaintiff's prior conviction.   The record establishes that plaintiff admitted the facts in the Statement of Indictment and was convicted of possession of a narcotic.   The record further establishes that plaintiff did not disclose this information when he applied for a visa and entered this country in 2003.   The information was only disclosed, two years later, when plaintiff responded to inquiries during his interview with USCIS in connection with his application for adjustment of his status.   Plaintiff was given more than one opportunity to contest or dispute information regarding this conviction.   The only "evidence" plaintiff submitted in that regard was his August 2010 affidavit which was provided in support of his motion to reconsider the denial of his application for a waiver of inadmissibility.   In the affidavit, plaintiff avers that he never admitted to possession of hashish and pled guilty only to possession of marijuana.   This sworn statement does not warrant a reversal of the agency's determination.   *See Singh*, 2008 WL 3152959, at *3 (the plaintiff's sworn statement that he relied on the advice of counsel was insufficient evidence).   Plaintiff provided no other information or evidence in connection with his arrest or conviction.   When the petitioner cannot establish that his foreign conviction fits within the exception identified in § 1182(h), the waiver is properly denied.   *See Danso v. Gonzales*, 489 F.3d 709, 713, n.1 (5th Cir. 2007) (the record did not establish the exact nature of the plaintiff's crime, but he was convicted in the England for "Fraudulent Evasion of Prohibition on Importation of Controlled Drug (Cannabis)" and as such, the plaintiff could not, "show that his foreign conviction fit[] this narrow exception").

With respect to the use of the multiplier, plaintiff has not cited to any caselaw or other authority which prevents the agency from relying upon the Opinion or parts thereof.  "In the immigration context, . . . the need for national uniformity is paramount, as the '[p]ower to regulate immigration is unquestionably exclusively a federal power'".  *Ferreira v. Ashcroft*, 382 F.3d 1045, 1050 (9th Cir. 2004) (recognizing that immigration laws should be applied uniformly regardless of state laws).  Thus, this Court awards deference to defendants' interpretation of the Opinion, *see Serrano*, 2010 WL 2010007, at *6 (an opinion of the General Counsel of the former INS explained the agencies reasoning with regard to its interpretation of relevant statutes and was entitled to deference under *Skidmore*), and upon review of the entire record, finds that the USCIS and AAO legal determinations were supported by reasonable, substantive and probative evidence.  Even assuming the statute is ambiguous in terms of the use of the multipliers, this Court finds that the agency evaluated the evidence and thoroughly set forth its reasoning for applying the multiplier.  Moreover, the agency provided plaintiff with the opportunity to combat the use of the multiplier which plaintiff failed to do.  The agencies decisions are clearly consistent and find support within the language of the Opinion.

As discussed, this Court is precluded from substituting it's own judgment for that of the agencies.  The Court does not discern any abuse of discretion or find it unreasonable that the USCIS and/or AAO applied the multiplier in this context.  *See Blacher v Ridge*, 436 F.Supp.2d 602, 608-09 (S.D.N.Y. 2006) (reliance upon the Department of Labor, Bureau of Labor Statistics, Occupational Handbook was reasonable and not an abuse of discretion).  While the Court may be troubled by the application of the Drug Equivalency Table in this matter, the Court must confine its analysis to the record.  Here, the record clearly supports the agencies' decisions and therefore, the Court will not disturb that finding.  Accordingly, defendants did not err in finding plaintiff

21

ineligible for a waiver.  Defendants' motion for summary judgment is granted and plaintiff's complaint is dismissed.

## CONCLUSION

**ORDERED** that defendant's motion for summary judgment (Dkt. No. 16) is hereby **GRANTED**; it is further

**ORDERED** that plaintiff's cross motion for summary judgment (Dkt. No. 21) is **DENIED**.

The Clerk is directed to close this matter.

**IT IS SO ORDERED.**

DATED:   July 21, 2011
            Albany, New York

Mae A. D'Agostino
U.S. District Judge